IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GABRIEL COYLE** | : |
| Plaintiff, | : Civil Action No.: |
| v. | : |
| **MONTGOMERY COUNTY, PENNSYLVANIA** | : |
| AND | : |
| **MONTGOMERY COUNTY CORRECTIONAL FACILITY** | : |
| AND | |
| **PRIMECARE MEDICAL, INC.** | |
| AND | |
| **JOHN DOE PRISON GUARDS 1-5** | |
| AND | |
| **JOHN DOE PRIME CARE EMPLOYEES 1-5** | |
| AND | |
| **PRIMECARE NURSE OCTAVIER BROWN** | |
| AND | |
| **PRIMECARE NURSE JILLIAN BRIGHTER** | |
| AND | |
| **PRIMECARE DOCTOR STEVEN WILBRAHAM** | |
| AND | |
| **PRIMECARE NURSE COURTNEY SHAEFFER** | |
| AND | |
| **PRIMECARE NURSE MARYAM ABDALGHANI** | |

AND

**PRIMECARE PHYSICIAN'S ASSISTANT BRIANNA CULP**

AND

**PRIMECARE PHYSICIAN'S ASSISTANT ANGELA NAPOLITANO**

                    **Defendants.**

## CIVIL ACTION COMPLAINT

NOW COMES Gabriel Coyle, Plaintiff, complaining of the conduct of the named Defendants, and in support thereof states the following.

## PARTIES

1. Plaintiff, Gabriel Coyle, is a citizen of the Commonwealth of Pennsylvania and an adult individual.

2. Defendant, Montgomery County, Pennsylvania, is a county organized pursuant to the laws of the Commonwealth of Pennsylvania. Montgomery County owns and operates the Montgomery County Correctional Facility, and along with Defendant Montgomery County responsible for the implementation of the prison's budget, staffing, training, policies, procedures, practices, and customs.

3. Defendant, Montgomery County Correctional Facility, is a state correctional facility pursuant to state law.

4. Defendant, PrimeCare Medical Inc., is a corporation with its principle place of business located at 3940 Locust Lane Harrisburg, PA 17109.

5. Defendants, John Doe Prison Guard 1, was at all times acting under color of state law in the scope and course of their duties as a prison guard with the Montgomery County Correctional Facility. Defendants John Doe Prison Guard 1 are being sued in their individual capacity.

6. Defendant, John Doe Prison Guard 2, was at all times acting under color of state law in the scope and course of their duties as a prison guard with the Montgomery County Correctional Facility. Defendants John Doe Prison Guard 2 is being sued in their individual capacity.

7. Defendant, John Doe Prison Guard 3, was at all times acting under color of state law in the scope and course of their duties as a prison guard with the Montgomery County Correctional Facility. Defendants John Doe Prison Guard 3 is being sued in their individual capacity.

8. Defendant, John Doe Prison Guard 4, was at all times acting under color of state law in the scope and course of their duties as a prison guard with the Montgomery County Correctional Facility. Defendants John Doe Prison Guard 4 is being sued in their individual capacity.

9. Defendant, John Doe Prison Guard 5, was at all times acting under color of state law in the scope and course of their duties as a prison guard with the Montgomery County Correctional Facility. Defendants John Doe Prison Guard 5 is being sued in their individual capacity.

10. Defendant, John Doe PrimeCare Employee 1, is an employee of Defendant PrimeCare who provides medical services within Defendant Montgomery County Correctional Facility.

11. Defendant, John Doe PrimeCare Employee 2, is an employee of Defendant PrimeCare who provides medical services within Defendant Montgomery County Correctional Facility.

12. Defendant, John Doe PrimeCare Employee 3, is an employee of Defendant PrimeCare who provides medical services within Defendant Montgomery County Correctional Facility.

13. Defendant, John Doe PrimeCare Employee 4, is an employee of Defendant PrimeCare who provides medical services within Defendant Montgomery County Correctional Facility.

14. Defendant, John Doe PrimeCare Employee 5, is an employee of Defendant PrimeCare who provides medical services within Defendant Montgomery County Correctional Facility.

15. Defendant, Octavier Brown, is an employee of Defendant PrimeCare who provides medical services within Defendant Montgomery County Correctional Facility.

16. Defendant, Jillian Brighter, is an employee of Defendant PrimeCare who provides medical services within Defendant Montgomery County Correctional Facility.

17. Defendant, Steven Wilbraham, is an employee of Defendant PrimeCare who provides medical services within Defendant Montgomery County Correctional Facility.

18. Defendant, Courtney Shaeffer, is an employee of Defendant PrimeCare who provides medical services within Defendant Montgomery County Correctional Facility.

19. Defendant, Maryam Abdalghani, is an employee of Defendant PrimeCare who provides medical services within Defendant Montgomery County Correctional Facility.

20. Defendant, Brianna Culp, is an employee of Defendant PrimeCare who provides medical services within Defendant Montgomery County Correctional Facility.

21. Defendant, Angela Napolitano, is an employee of Defendant PrimeCare who provides medical services within Defendant Montgomery County Correctional Facility.

## JURISDICTION AND VENUE

22. Jurisdiction and Venue are proper in this Honorable Court as Defendants' constitutional violations, medical malpractice torts, and otherwise violative conduct occurred in Montgomery County, Pennsylvania.

## FACTS

23. Plaintiff was transferred from Salem County Correctional Facility in Woodstown, New Jersey, to Montgomery County Correctional Facility and incarcerated as an inmate on October 12, 2019.

24. On October 12, 2019, Plaintiff underwent a medical screening with PrimeCare Nurse Rahseeda Perry. In her intake report, Nurse Perry indicated that Plaintiff suffered from back pain from a previous 2017 car accident, and Plaintiff was placed on a work and gym restriction.

25. Beginning on or about October 22, 2019, Plaintiff began to complain of intense and excruciating pain in his left leg to both John Doe Prison Guards 1-5 and John Doe PrimeCare Employees 1-5.

26. Because of his intense pain, Plaintiff began requesting medical treatment in writing by way of "medical slips" slips provided to him by staff for Defendants Montgomery County Correctional Facility and PrimeCare, and handing them to John Doe Prison

Guards 1-5 and John Doe PrimeCare Employees 1-5 on October 22, 2019, in order to seek medical attention.

27. Plaintiff filled out medical slips detailing his leg pain every day from October 22, 2019, through November 2, 2019.

28. Despite Plaintiff's daily complaints of intense leg pain via the medical slips that were provided to him, Plaintiff was not given any medical attention by Defendants Montgomery County Correctional Facility or PrimeCare.

29. Defendants Montgomery County Correctional Facility and PrimeCare did not record and made no mention of Plaintiff's daily medical slips complaining of left leg pain from October 22, 2018, through November 2, 2019.

30. Finally, on November 2, 2019, Plaintiff was seen by PrimeCare Nurse Octavier Brown for his complaints of left leg pain.

31. According to records from Defendant PrimeCare, Nurse Brown reported that Plaintiff was suffering from pain and swelling in his left leg; an inability to bear weight; throbbing, aching and sharp pain in left knee; and Crepitus (bone grinding) with movement in the left knee.

32. According to records from Defendant PrimeCare, Plaintiff told Nurse Brown on November 2, 2019, that the pain in his leg has started 20 days prior.

33. Following his November 2, 2019 appointment with Nurse Brown, Plaintiff was prescribed 200 mg of ibuprofen daily to treat the pain and an order was given to provide Plaintiff a wheelchair.

34. Despite the order to give Plaintiff a wheelchair, John Doe Prison Guards 1-5 did not allow Plaintiff to use the wheelchair and took it away from him after his November 2, 2019 appointment with Nurse Brown.

35. On November 3, 2019, Plaintiff was seen by PrimeCare Nurse Jillian Brighter for his continued complaints of left knee pain, swelling in his left leg, and trouble bearing weight.

36. On November 4, 2019, Plaintiff again complained of sharp pain in his left leg to PrimeCare Nurse Michael Malley.

37. On November 5, 2019, Plaintiff was seen by PrimeCare Doctor Steven Wilbraham. Doctor Willibraham noted that Plaintiff was limping and left knee pain.

38. Doctor Willibraham noted that there was subtle effusion in Plaintiff's left knee, but ultimately concluded that Plaintiff's "left knee complaint seems out of proportion" to Doctor Willibraham's exam findings.

39. The only additional treatment prescribed by Doctor Willibraham to Plaintiff was an increase of his daily ibuprofen prescription to 600 mg.

40. On November 9, 2019, Plaintiff was seen by PrimeCare Nurse Courtney Shaeffer, who reported that Plaintiff was unable to bear any weight on his left leg, that his left knee was swollen, and that Plaintiff stated the ibuprofen was infective in treating the pain in his left leg.

41. On November 10, 2019, Plaintiff was seen by PrimeCare Nurse Maryam Abdalghani, who reported that Plaintiff was complaining of chest pain that radiated down his left side and had been persistent for three days, and was aggravated by the pain in his knee, which was also getting worse.

42. From November 2, 2019, until November 10, 2019, the only treatment given to Plaintiff for his severe and worsening pain was ibuprofen.

43. On November 11, 2019, Plaintiff was seen by PrimeCare Physician's Assistant Brianna Culp, who reported that Plaintiff was still unable to bear weight on his left leg, now to the that his left knee was swollen, that these symptoms had been worsening and that Plaintiff stated the ibuprofen was infective in treating the pain in his left leg.

44. During Plaintiff's November 11, 2019 visit with Physician's Assistant Culp, Plaintiff additionally reported he had developed pain and swelling in his right elbow, and that he was experiencing discomfort in the left side of his chest.

45. On November 11, 2019, lab work and blood cultures were ordered for Plaintiff.

46. Additionally, on November 11, 2019, Plaintiff was prescribed two antibiotics, Augmentin and Clindamycin, as well as an anti-inflammatory medication, Prednisone.

47. On November 13, 2019, Plaintiff was seen by PrimeCare Physician's Assistant Angela Napolitano, who reported Plaintiff was still suffering from left knee swelling, warmth, and pain that has been present for three weeks; right elbow swelling; a complete inability to walk; right collar bone and shoulder pain with an inability to move his right shoulder.

48. Additionally, on November 13, 2019, Defendant PrimeCare received the results of Plaintiff's blood cultures, which indicated an elevated white blood count of 20, well above the normal white blood cell county of 8-10 and highly indicative of an infection.

49. Despite the results of Plaintiff's blood cultures, Plaintiff was not immediately rushed to an emergency department or put on IV antibiotics, and was instead kept at Defendant Montgomery County Correctional Facility.

50. On November 14, 2019, Plaintiff was observed by PrimeCare Clinical Social Worker Saragh Heuges. Hueges reported that Plaintiff was lying in a bed in the dayroom of Defendant Montgomery County Correctional Facility, and that Plaintiff stated, "I have a virus, and I can't move my left arm and I am in so much pain, I wish they would just take me to the hospital."

51. On November 15, 2019, Plaintiff was again seen by Physician's Assistant Napolitano, who reported Plaintiff was still in severe pain.

52. On November 16, 2019, Plaintiff was rushed to Emergency Medicine at Einstein Medical Center Montgomery.

53. During a 10-day stay at Einstein Medical Center Montgomery, Plaintiff was diagnosed with septic arthritis, sepsis, and MRSA infection.

54. Medical staff at Einstein Medical Center Montgomery had to perform a left knee arthroscopic washout with drain placement to treat Plaintiff's infection.

55. Medical staff at Einstein Medical Center Montgomery began Plaintiff on an IV of the antibiotics Daptomycin.

56. The delay in getting Plaintiff to initially be seen by Defendant PrimeCare staff at Defendant Montgomery County Correctional Facility for his leg, arm and chest pain, along with the delay in getting Plaintiff diagnosed at Einstein Medical Center Montgomery, caused Plaintiff to suffer permanent, severe and serious injuries and damages which are described at length below.

## COUNT 1: VIOLATION OF THE 14ᵀᴴ AMENDMENT – DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED

## Plaintiff v. PrimeCare Medical, Inc., John Doe Prison Guards 1-5, and John Doe PrimeCare Employees 1-5

57. The preceding paragraphs are incorporated by reference as though laid out fully herein.

58. Defendants, John Doe Prison Guards 1-5, and Defendants, John Doe PrimeCare Employees 1-5, were tasked with assessing Plaintiff's day-to-day health and relaying any health issues Plaintiff was suffering to other medical staff at the prison.

59. Despite Plaintiff's daily complaints of severe leg pain from October 22, 2019, until November 19, 2019, Defendants, John Doe Prison Guards 1-5, and Defendants, John Doe PrimeCare Employees 1-5, completely ignored Plaintiff's complaints and failed to ensure Plaintiff received medical treatment.

60. Defendants, John Doe Prison Guards 1-5, and Defendants, John Doe PrimeCare Employees 1-5, ignored Plaintiff's complaints despite observing Plaintiff in a state of obvious and severe physical distress from his left leg pain.

61. In fact, Defendants, John Doe Prison Guards 1-5, made Plaintiff's condition worse by refusing to allow him to use the wheelchair he was given.

62. It was obvious to any individual who encountered Plaintiff that he was in need of immediate medical treatment to treat the pain in his leg.

63. As a result of the actions and/or omissions of Defendants, John Doe Prison Guards 1-5, and Defendants, John Doe PrimeCare Employees 1-5, Plaintiff suffered anguish, extreme physical pain, and agony.

64. The conducto of Defendants John Doe Prison Guards 1-5, and Defendants, John Doe PrimeCare Employees 1-5, demonstrated a deliberate indifference to Plaintiff's serious medical needs

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT II – MUNICIPAL LIABILITY

### Plaintiff v. Montgomery County and Montgomery County Correctional Facility

65. The preceding paragraphs are incorporated by reference as though laid out fully herein.

66. Defendants Montgomery County and Montgomery County Correctional Facility lack sufficient policies and training relating to:

    a. Observing and treating individuals suffering pain in their extremities;

    b. Observing and treating individuals exhibiting signs of an infection;

    c. Properly receiving and recording medical slips from inmates complaining of medical problems;

    d. Providing medical care to acutely injured individuals;

67. Additionally, Defendants Montgomery County and Montgomery County Correctional Facility failed to enforce policies about allowing inmates given medical orders for wheelchairs to use their wheelchairs.

68. As a result of the lack of policies and training by Defendants Montgomery County and Montgomery County Correctional Facility, Montgomery County prison guards are woefully unequipped to handle situations involving inmates suffering severe medical issues and are ignorant of the limits of their lawful authority.

69. Montgomery County's lack of policies and training were a moving force behind the deprivation of Plaintiff's constitutional rights.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

### COUNT III – MEDICAL MALPRACTICE

**Plaintiff v. PrimeCare Medical, Inc., John Doe PrimeCare Employees 1-5, Octavier Brown, Jillian Brighter, Steven Wilbraham, Courtney Shaeffer, Maryam Abdalghani, Brianna Culp, and Angela Napolitano**

70. The preceding paragraphs are incorporated by reference as though laid out fully herein.
71. During Defendants treatment and/or lack thereof of Plaintiff from October 22, 2019, until November 16, 2019, Defendants' treatment fell below the applicable standard of care, including but not limited to:
    a. Failure to have Plaintiff seen by a medical professional from his initial complaint of leg pain on October 22, 2019, until November 2, 2019;
    b. Failure to run appropriate diagnostic studies after Plaintiff's initial appointment on November 2, 2019, complaining of left knee pain;
    c. Failure to administer antibiotics to Plaintiff from November 2, 2019, until November 11, 2019, to treat his obvious infection;

    d. Administering the antibiotics Augmentin and Clindamycin, as well as an anti-inflammatory medication, Prednisone, at the same time blood cultures were take, potentially interfering with the accuracy of the blood culture results;

    e. Failure to immediately administer IV antibiotics to Plaintiff after learning of his high white blood cell count on November 13, 2019;

    f. Failing to immediately send Plaintiff to an emergency medical department to treat his obvious infection after learning of his high white blood cell count on November 13, 2019;

72. The aforementioned failures to meet the applicable standard of care by the Defendants was the direct and proximate cause of Plaintiff suffering permanent, severe and serious injuries and damages, including but not limited to, Septic arthritis, sepsis, and MRSA infection.

73. Defendant PrimeCare is sued in this Count under a *respondeat superior* theory of liability as Defendants, John Doe PrimeCare Employees 1-5, Octavier Brown, Jillian Brighter, Steven Wilbraham, Courtney Shaeffer, Maryam Abdalghani, Brianna Culp, and Angela Napolitano, were acting within the scope of their employment when they failed to provide Plaintiff with necessary medical care.

**WHEREFORE**, Plaintiff demands judgment in his favor, in an amount in excess of One Million Dollars($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

Gabrie C. Coyle
5910 Erdrick St. APT. 2
Phila, PA 19135
267-408-0459