IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GABRIEL COYLE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 21-4704 |
| | : | |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY, | : | |
| PENNSYLVANIA; MONTGOMERY | : | |
| COUNTY CORRECTIONAL FACILITY; | : | |
| PRIMECARE MEDICAL, INC.; JOHN | : | |
| DOE GUARDS 1-5; JOHN DOE PRIME | : | |
| CARE EMPLOYEES 1-5; PRIMECARE | : | |
| NURSE OCTAVIER BROWN; | : | |
| PRIMECARE NURSE JILLIAN | : | |
| BRIGHTER; PRIMECARE DOCTOR | : | |
| STEVEN WILBRAHAM; PRIMECARE | : | |
| NURSE COURTNEY SHAEFFER; | : | |
| PRIMECARE NURSE MARYAM | : | |
| ABDALGHANI; PRIMECARE | : | |
| PHYSICIAN'S ASSISTANT BRIANNA | : | |
| CULP; PRIMECARE PHYSICIAN'S | : | |
| ASSISTANT ANGELA NAPOLITANO, | : | |
| MONTGOMERY EINSTEIN HOSPITAL | : | |
| JOHN DOE SURGERY TEAM 1-5; and | : | |
| JOHN DOE GUARD WHITE SHIRT 1, | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM OPINION</u>

Smith, J.                                                                                    March 20, 2023

The *pro se* plaintiff, who is proceeding *in forma pauperis*, alleges that between October

and November 2019, he was incarcerated in a Pennsylvania county jail for several weeks while

awaiting a probation/parole violation hearing. During this time, the plaintiff claims to have

suffered from serious medical issues with his left leg that were initially ignored by the correctional

officers and the medical staff, which consisted of employees of a private company that had

contracted with the county to provide medical services for its jail. After approximately eleven days

of being ignored, he finally saw a nurse who examined him, prescribed him Ibuprofen, and ordered that he be permitted to use a wheelchair. The order for the wheelchair was apparently refused by the corrections officers, as they took the plaintiff's wheelchair from him.

For approximately the next 13 days, the plaintiff had numerous visits with the medical staff, including a doctor, several nurses, and at least two physician's assistants. He also was prescribed a higher dose of Ibuprofen for his pain and had lab tests performed on his blood. When those lab tests showed that the plaintiff had a high white blood cell count, which is indicative of an infection, the medical staff prescribed him two antibiotics and a corticosteroid. Despite these measures, the plaintiff alleges that the medical staff failed to sufficiently treat his medical issues, because he was ultimately transported to a hospital where he was treated for a serious infection and other serious conditions relating to that infection.

Based on these allegations, the plaintiff asserts three causes of action: two causes of action under 42 U.S.C. § 1983 for constitutional violations and one state-law tort claim. The first cause of action under section 1983 is against the private company providing medical services at the jail, certain unidentified employees of that company, and certain unidentified correctional officers, because they were allegedly deliberately indifferent to his serious medical needs when they did not respond to his submissions of medical slips seeking medical attention for pain in his left leg for approximately eleven days and then failed to adequately treat the pain. The unidentified correctional officers also allegedly refused to allow the plaintiff to use a wheelchair. The second cause of action under section 1983 is a municipal liability claim against the county, which allegedly failed to properly train its employees and enforce a policy related to incarcerated individuals' use of wheelchairs. The plaintiff also alleges that the county lacked certain policies relating to aspects of his medical care, which led to his injuries. The state-law cause of action is for medical

malpractice against the private medical provider and several of its employees working at the county jail.

Unfortunately, even though the plaintiff commenced this action in late-October 2021, the pleadings are not yet closed due to significant delays attributable only to the plaintiff. Most of the delay has been due to the plaintiff's non-responsiveness, some of it was caused by his representation that private counsel was going to represent him in this case, and the most recent delay is due to his personal medical issues. As a result of these delays, it took the plaintiff more than a year to file an amended complaint, which essentially consists of a copy of his original complaint, but with approximately seven new paragraphs and apparently three new defendants: the hospital where he was treated for his infection; unknown "surgery team" members at the hospital; and an unidentified correctional officer known only by his white shirt. In addition, the plaintiff has moved to have the court appoint an attorney to represent him in this case, which is opposed by one group of defendants.

The private medical provider and all but one of its employees named as defendants in the amended complaint have filed a motion to dismiss certain portions of the amended complaint. These defendants seek to have the court dismiss the plaintiff's section 1983 claim for deliberate indifference to his serious medical needs against the company because he has only included allegations that would, at best, attempt to show vicarious liability, which is an improper basis for liability against a private company providing medical services to a county jail under section 1983. They also seek to have the court dismiss the plaintiff's medical malpractice claims because, despite him having received notice about his failure to file certificates of merit as early as mid-May 2022, he has never filed certificates of merit in this case.

The county has also filed a motion to dismiss the amended complaint. The county seeks to have the court dismiss the plaintiff's section 1983 municipal liability claim because it believes that he failed to plausibly allege that a policy (or lack of a policy), custom, or failure to train led to any constitutional violations.

After liberally reviewing the amended complaint, the court must grant both sets of motions to dismiss. As explained below, the plaintiff's section 1983 municipal liability claim against the county and his deliberate-indifference-to-serious-medical-needs claim against the private medical provider require him to plausibly allege that their policies, customs, lack of policies, or lack of training caused his alleged constitutional violations. Here, the plaintiff has not included any factual allegations relating to a policy or custom of the private medical provider and, only appears to seek to impose vicarious liability on this company. In addition, the plaintiff's allegations against the county are too speculative and conclusory to state a plausible claim for municipal liability against it. Concerning the medical malpractice claims, the plaintiff has been on notice since at least mid-May 2022 that he needed to file certificates of merit and has not yet done so. Since the plaintiff has not come close to substantially complying with his obligations relating to those certificates of merit, the court must dismiss his medical malpractice claims as well. Regarding the new defendants added in the amended complaint, the court has screened the plaintiff's allegations relating to those defendants under 28 U.S.C. § 1915(e) and will dismiss those claims because (1) any claims against the hospital or medical staff involved with the plaintiff's treatment after being transported there from the jail are clearly barred by the statute of limitations and (2) his allegations against the correctional officer with the white shirt do not rise to the level of a constitutional violation.

The granting of these motions to dismiss and dismissal of most of the claims from the amended complaint will leave the plaintiff with his section 1983 cause of action for deliberate indifference to his serious medical needs against five unknown correctional officers and five unknown employees of the private medical company. With these being the only claims remaining in this case, the court will deny the plaintiff's motion for appointment of counsel.

## I.    ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Gabriel Coyle ("Coyle"), commenced this action by filing an unsigned complaint that the clerk of court docketed on October 22, 2021. *See* Doc. No. 1. Coyle named as defendants: (1) Montgomery County (the "County"); (2) the Montgomery County Correctional Facility ("MCCF"); (3) PrimeCare Medical, Inc. ("PrimeCare"); (4) PrimeCare nurses Octavier Brown ("Nurse Brown"), Jillian Brighter ("Nurse Brighter"), Courtney Shaeffer ("Nurse Shaeffer"), Maryam Abdalghani ("Nurse Abdalghani"); (5) PrimeCare Dr. Steven Wilbraham; PrimeCare physician assistants Brianna Culp ("PA Culp") and Angela Napolitano ("PA Napolitano"); John Doe Prison Guards 1–5; and John Doe PrimeCare Employees 1–5. *See* Compl. at ECF p. 1, Doc. No. 1. For causes of action, Coyle asserted (1) claims under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment against PrimeCare, John Doe Prison Guards 1–5, and John Doe PrimeCare Employees 1–5, *see id.* at ECF pp. 9–11; (2) claims under section 1983 for municipal liability against the County and MCCF, *see id.* at ECF pp. 11–12; and (3) Pennsylvania-law claims for medical malpractice against PrimeCare, PrimeCare Employees 1–5, Nurse Brown, Nurse Brighter, Nurse Shaeffer, Nurse Abdalghani, Dr. Wilbraham, PA Culp, and PA Napolitano, *see id.* at ECF pp. 12–13. In terms of requested relief, Coyle sought over $1 million in damages and other forms of monetary relief. *See id.* at ECF pp. 11, 12, 13.

Although Coyle neither remitted the filing fee nor filed an application for leave to proceed *in forma pauperis* when he filed his complaint, he rectified this mistake by filing an application for leave to proceed *in forma pauperis* on October 27, 2021 (the "IFP Application"). *See* Doc. No. 3. The court then attempted to fix the issue with Coyle having neglected to sign his complaint by entering an order on November 4, 2021, which, *inter alia*, directed the clerk of court to send the unsigned complaint to Coyle, required Coyle to sign his complaint, and required Coyle return the signed complaint to the court within 30 days. *See* Nov. 4, 2021 Order at 1–2, Doc. No. 4. Coyle signed the complaint and timely returned it to the clerk of court on December 1, 2021. *See* Doc. No. 5.[1]

On January 7, 2022, the court entered an order which, *inter alia*, granted the IFP Application, dismissed with prejudice Coyle's section 1983 municipal liability claim against the MCCF for the failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2), and permitted the remainder of the complaint to proceed to service.[2] *See* Doc. No. 6. On May 19, 2022, Defendants PrimeCare, Nurse Abdalghani, Nurse Brighter, Nurse Shaeffer, PA Culp, and PA Napolitano jointly filed two documents: First, they filed a notice of their intention to file a motion to dismiss the professional negligence claims in the complaint because Coyle had not filed a certificate of merit as required by Pennsylvania Rule of Civil Procedure 1042.3; Second, they filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Doc. Nos.

---

[1] The court recognizes that the docket indicates that this is Coyle's amended complaint; however, it is only a signed copy of his original complaint and not an amended complaint. Therefore, the court treats the complaint filed at Doc. No. 5 as the original complaint in this case.

[2] Regarding service of process, the court directed the clerk of court to serve requests for waivers of service on all defendants and to give them 30 days to return the waivers. *See* Jan. 7, 2022 Order at 1–2, Doc. No. 6. For any defendants who did not return executed waivers of service within the 30-day period, the court directed the clerk of court to issue summonses for those defendants and then transmit those summonses and copies of the complaint to the United States Marshals for service of process. *See id.* at 2.

13, 14. Then, on May 21, 2022, the County filed its own motion to dismiss the complaint under Rule 12(b)(6). *See* Doc. No. 15.

For almost three months after the defendants filed their motions to dismiss, Coyle took no action in response to them.[3] In addition, there was no indication by that time that Nurse Brown and Dr. Wilbraham had been served, and it was well more than 90 days since the court had screened the complaint and allowed most of Coyle's claims to be served. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."). As such, the court was concerned that Coyle was no longer intending to proceed with this case and scheduled a telephone conference with the parties for August 23, 2022.

Although defense counsel were present for the August 23, 2022 telephone conference, Coyle was not, and he had neither notified the court that he was not going to participate in the conference nor sought to have the court continue the conference. A little more than a month passed until the court entered an order on September 30, 2022, which required Coyle to notify the court on or before October 14, 2022, whether he wanted to prosecute this action. *See* Sept. 30, 2022 Order at 1, Doc. No. 18. The court also extended the time for Coyle to respond to the motions to dismiss until October 14, 2022, and scheduled another telephone conference for October 18, 2022. *See id.* at 2.

---

[3] Under Local Civil Rule 7.1(c), Coyle had 14 days from service of the motions to dismiss to file a response in opposition to them. *See* E.D. Pa. Loc. Civ. R. 7.1(c) ("Unless the Court directs otherwise, any party opposing the motion shall serve a brief in opposition together with such answer or other response that may be appropriate, within fourteen (14) days after service of the motion and supporting brief."). He also could have filed an amended complaint as a matter of right within 21 days after being served with the motions to dismiss. *See* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course within: . . . 21 days after service of a motion under Rule 12(b), (e), or (f)[.]").

On October 14, 2022, the final day the court gave Coyle to show activity in the case, the clerk of court docketed a letter dated October 13, 2022 from Coyle, in which he indicated that he had been having personal issues caring for his father but still wished to prosecute the case.[4] *See* Doc. No. 19 at ECF p. 1. Coyle also stated that he was in the process of retaining an attorney to represent him in this case. *See id.*

The court proceeded to hold the telephone conference which had been scheduled for October 18, 2022. Once again, defense counsel were present on the line for the conference, but Coyle was not, despite him having sent an email to chambers earlier in the day where he acknowledged that the telephone conference had been scheduled. The undersigned's civil deputy clerk had also reached out to Coyle about the conference at the email address he had provided to the clerk of court, but Coyle did not respond at all that day. However, on the following day, Coyle sent an email to chambers in which he stated that he did not see the email from the undersigned's civil deputy that was sent to him, and he was confused about whether the conference was being rescheduled. In an abundance of caution, the court entered an order scheduling another telephone conference for November 7, 2022, to discuss the overall status of the case, Coyle's intent regarding the pending motions to dismiss, and what actions Coyle had taken, if any, to provide the Marshals with information so that they could effect service on the still-apparently unserved Nurse Brown and Dr. Wilbraham. *See* Nov. 7, 2022 Order at 1–2, Doc. No. 20.

On October 26, 2022, PrimeCare, Nurse Abdalghani, Nurse Brighter, Nurse Shaeffer, PA Culp, and PA Napolitano filed a motion to have the court dismiss the case against them for lack of prosecution. *See* Doc. No. 21. The following day, the court entered an order rescheduling the upcoming telephone conference to November 10, 2022. *See* Doc. No. 22.

---

[4] Also attached to this letter was a request by Coyle to add a single paragraph to his complaint. *See* Doc. No. 19 at ECF p. 2.

On November 10, 2022, the court held an on-the-record telephone conference with Coyle and counsel for the defendants. During the conference, Coyle indicated that he had found an attorney from Chicago whom he believed would be representing him in this case and, as such, Coyle asked for an extension of 30 days to file an amended complaint in response to the pending motions to dismiss. Although the defendants opposed granting Coyle any extension of time due to the delays he had already caused in the matter, Coyle agreed that the court could enter an order granting the motions to dismiss and dismissing the complaint without prejudice to Coyle filing an amended complaint within 45 days. On November 18, 2022, the court entered an order granting the motions to dismiss, dismissing the complaint without prejudice, giving Coyle until December 27, 2022, to file an amended complaint, denying without prejudice the motion to dismiss for lack of prosecution, and warning Coyle that if he did not file an amended complaint by December 27, 2022, the court would dismiss the case with prejudice for lack of prosecution. *See* Nov. 18, 2022 Order at 2, Doc. No. 24.

Coyle, still proceeding *pro se*, timely filed an amended complaint on December 26, 2022.[5] *See* Doc. No. 25. Coyle's amended complaint consists of a copy of his original complaint and two additional pages where he appears to add seven new paragraphs of allegations and references an Eighth Amendment claim. *See* Am. Compl. at ECF pp. 1, 2. As for the named defendants, he renamed those defendants named in his original complaint: the County, MCCF (even though the court had previously dismissed with prejudice the claims against it), PrimeCare, John Doe Prison Guards 1-5, John Doe PrimeCare Employees 1-5, Nurse Brown, Nurse Brighter, Nurse Shaeffer, Nurse Abdalghani, PA Culp, PA Napolitano, and Dr. Wilbraham. *See id.* at ECF p. 1. He also now

---

[5] Along with the amended complaint, Coyle attached a copy of an email where he indicated that the law firm he thought was going to represent him was not going to do so. *See* Doc. No. 25-1. In addition, he made a request that the court appoint counsel for him. *See id.*

added as defendants Montgomery Einstein Hospital (the "Hospital"), John Doe Surgery Team 1–5 (the "Surgery Team"), and "John Doe Guard White Shirt 1" ("Mr. White Shirt"). *Id.*

Regarding the factual allegations in the amended complaint, Coyle alleges that after previously being incarcerated at a New Jersey correctional facility, he was transferred to MCCF on October 12, 2019. *See id.* at ¶ 23. On the same date, a PrimeCare employee (who is not named as a defendant) conducted a medical screening of Coyle and "indicated that [he] suffered from back pain from a previous 2017 car accident" and placed him "on a work and gym restriction." *Id.* at ¶ 24.

In or around October 22, 2019, Coyle began experiencing intense and excruciating pain in his left leg, and he complained about this pain to John Doe Prison Guards 1–5 and John Doe PrimeCare Employees 1–5. *See id.* at ¶ 25. He also began seeking medical attention and treatment by submitting medical slips and handing them to John Doe Prison Guards 1–5 and John Doe PrimeCare Employees 1–5. Although Coyle submitted those medical slips every day from October 22, 2019, through November 2, 2019, he received no medical attention and claims that the County and PrimeCare "did not record and made no mention of [his] daily medical slips complaining of left leg pain from October 22, 2018 [sic], through November 2, 2019." *Id.* at ¶¶ 27–29.

On November 2, 2019, Nurse Brown "[f]inally" saw Coyle regarding his complaints of leg pain. *See id.* at ¶ 30. During Nurse Brown's visit, Coyle told her that he had been having pain in his left leg for 20 days; he was suffering from pain and swelling in his left leg; he was unable to bear his weight; he had "throbbing, aching and sharp pain" in his left knee; and he had "Crepitus (bone grinding) with movement in the left knee." *Id.* at ¶¶ 31–32. Following this visit with Nurse Brown, Coyle was prescribed 200mg of Ibuprofen per day for the pain, and he was ordered to have a wheelchair. *See id.* at ¶ 33. Despite the order to allow Coyle to use a wheelchair, John Doe Prison

Guards 1–5 did not allow him to use a wheelchair and "took it away from him after his November 2, 2019 appointment with Nurse Brown." *Id.* at ¶ 34.

For the next few days after his visit with Nurse Brown, Coyle either visited with or complained to other PrimeCare employees about his left leg. On November 3, 2019, Nurse Brighter visited Coyle regarding the pain and swelling in his left knee. *See id.* at ¶ 35. On November 4, 2019, Coyle complained to another PrimeCare nurse (who is not a defendant in this action) about the sharp pain in his left leg. *See id.* at ¶ 36. Then, on November 5, 2019, Dr. Wilbraham examined Coyle. *See id.* at ¶ 37. Coyle alleges that Dr. Wilbraham "noted [Coyle] was limping and [had] left knee pain." *Id.* Dr. Wilbraham also "noted that there was subtle effusion in [Coyle's] left knee, but ultimately concluded that [Coyle's] 'left knee complaint seems out of proportion' to [his] exam findings." *Id.* at ¶ 38. Based on his examination, Dr. Wilbraham's only change to Coyle's medical regimen was increasing the dosage of Ibuprofen to 600 mg per day. *See id.* at ¶ 39.

Coyle alleges that Nurse Shaeffer examined him on November 9, 2019, and she reported that Coyle could not bear any weight on his left leg, his left knee was swollen, and he had indicated that the Ibuprofen was insufficient to alleviate the pain in his left leg. *See id.* at ¶ 40. The following day, Nurse Abdalghani examined Coyle, and she noted that he was "complaining of chest pain that radiated down his left side and had been persistent for three days, and was aggravated by the pain in his knee, which was also getting worse." *Id.* at ¶ 41. As of the date of Nurse Abdalghani's visit with Coyle, the only medical treatment provided to him for his medical issues was the Ibuprofen. *See id.* at ¶ 42.

On November 11, 2019, PA Culp examined Coyle, and she reported that he was still unable to bear weight on his left leg; his left knee was swollen; his symptoms were worsening; he had

stated that the Ibuprofen was ineffective; he had reported that he developed pain and swelling in his right elbow; and he reported experiencing discomfort in the left side of his chest. *See id.* at ¶¶ 43–44. Based on these complaints (and presumably PA Culp's observations), lab work and blood cultures were ordered for Coyle. *See id.* at ¶ 45. In addition, Coyle was prescribed two antibiotics, Augmentin[6] and Clindamycin,[7] and an anti-inflammatory medication, Prednisone.[8] *See id.* at ¶ 46.

PA Napolitano visited with Coyle on November 13, 2019. *See id.* at ¶ 47. During her visit, she reported that Coyle "was still suffering from left knee swelling, warmth and pain that has been persistent for three weeks; right elbow swelling; a complete inability to walk; [and] right collar bone and shoulder pain with an inability to move his right shoulder." *Id.*

On the same day of PA Napolitano's visit, PrimeCare received the results of Coyle's blood cultures, which indicated that he had an elevated white cell blood count of 20, which was "well above the normal white blood cell county [sic] of 8-10 and highly indicative of infection." *Id.* at ¶ 48. Yet, despite this test result, Coyle "was not immediately rushed to an emergency department of put on IV antibiotics[] and was instead kept at" MCCF. *Id.* at ¶ 49.

On November 14, 2019, a PrimeCare clinical social worker observed Coyle lying in a bed in the dayroom. *See id.* at ¶ 50. The social worker reported that Coyle stated: "I have a virus, and

---

[6] Augmentin "is a combination penicillin-type antibiotic used to treat a wide variety of bacterial infections. It works by stopping the growth of bacteria. [It] treats only bacterial infections. It will not work for viral infections (such as common cold, flu)." WebMD, https://www.webmd.com/drugs/2/drug-4333-5050/augmentin-oral/amoxicillin-clavulanic-acid-suspension-oral/details (last visited March 17, 2023).

[7] Clindamycin "is used to treat a wide variety of bacterial infections. It is an antibiotic that works by stopping the growth of bacteria. This antibiotic treats only bacterial infections. It will not work for virus infections (such as common cold, flu)." WebMD, https://www.webmd.com/drugs/2/drug-12235/clindamycin-hcl-oral/details (last visited March 17, 2023).

[8] Prednisone "is used to treat conditions such as arthritis, blood disorders, breathing problems, severe allergies, skin diseases, cancer, eye problems, and immune system disorders. Prednisone . . . decreases your immune system's response to various diseases to reduce symptoms such as swelling and allergic-type reactions." WebMD, https://www.webmd.com/drugs/2/drug-6007-9383/prednisone-oral/prednisone-oral/details (last visited March 17, 2023).

I can't move my left arm and I am in so much pain. I wish they would just take me to the hospital." *Id.*

PA Napolitano visited Coyle again on November 15, 2019, and she reported that Coyle was still in severe pain. *See id.* at ¶ 51. The following day, Coyle was "rushed" to the emergency medicine department at the Hospital. *Id.* at ¶ 52. Coyle stayed at this hospital for ten days, during which he was diagnosed with septic arthritis, sepsis, and a MRSA infection. *See id.* at ¶ 53. To treat the MRSA infection, "[m]edical staff . . . had to perform a left knee arthroscopic washout with drain placement to treat [his] infection." *Id.* at ¶ 54. In addition, Coyle was placed on an IV of Daptomycin, an antibiotic. *See id.* at ¶ 55.

Coyle avers that the Surgery Team, "while using a scope with a light and camera, missed the infection/fracture about two inches where the infection was that they cleaned out." *Id.* at ¶ 79.[9] He also alleges that "[w]hen [he] was admitted to Nazareth Hospital on 12/28/2019, [he] was told that [his] left femur was fractured and [i]t was not new but weeks old." *Id.* at ¶ 80.

Coyle's final group of allegations are among the seven new paragraphs of allegations he added to his original complaint. Unfortunately, these allegations are undated and, such, the court cannot discern where they fit in with his other factual allegations. Coyle alleges that after he was "in the medical unit for about 8 days," PrimeCare Employees 1–5 and John Doe Guards 1–5 medically cleared him after telling him that he "should get [his] money back[,] who gave [him] acting [l]essons cause [sic] [he] suck[s]." *Id.* at ¶ 74. Despite what these defendants thought about the authenticity of Coyle's medical condition, another MCCF guard offered to carry his belongings to his cell area because he saw how sick Coyle looked. *See id.* at ¶ 75. Coyle was grateful for this guard's help in part because "[h]e was the only person that treated [him] like a human being." *Id.*

---

[9] Instead of adding his additional allegations at the end of the amended complaint, Coyle placed his at the beginning. *See* Am. Compl. at ECF pp. 1–2.

Later that day after returning to his cell, Coyle blacked out and "slammed [his] entire body into the concert [sic] floor." *Id.* at ¶ 76. Coyle asserts that the inmate in the bunk above him, a black male in his 20's, witnessed Coyle's fall. *See id.*

The following day, Coyle requested a wheelchair because he was asked to go to the medical unit and could not walk on his own. *See id.* at ¶ 77. Instead of promptly getting Coyle a wheelchair, Mr. White Shirt wrote him up, taking Coyle's phone and suspending his commissary privileges for two weeks. *See id.* Mr. White Shirt also alleged sent another inmate to Coyle to get him to sign the write up, and never even personally saw him. *See id.*

Later that day, Coyle received a wheelchair so he could go to the medical unit. *See id.* at ¶ 78. When Coyle came through the door, John Doe Prison Guards 1–5 said, "Get the F*** out of the chair you know where to go," which Coyle interpreted as returning to the lock-up area. *Id.* (capitalization altered).

Along with these allegations, Coyle asserted the same three causes of action he included with his original complaint, namely: (1) claims under section 1983 for deliberate indifference to serious medical needs in violation of the Fourteenth Amendment against PrimeCare, John Doe Prison Guards 1–5, and John Doe PrimeCare Employees 1–5, *see id.* at ECF pp. 11–13; (2) claims under section 1983 for municipal liability against the County and MCCF, *see id.* at ECF pp. 13–14; and (3) Pennsylvania-law claims for medical malpractice against PrimeCare, PrimeCare John Doe Employees 1–5, Nurse Brown, Nurse Brighter, Nurse Shaeffer, Nurse Abdalghani, Dr. Wilbraham, PA Culp, and PA Napolitano, *see id.* at ECF pp. 14–15. Regarding the newly added defendants, he did not specifically add them to any of these causes of action. *See generally* Am. Compl. at ECF pp. 1–15. He did, however, appear to add a cause of action for cruel and unusual

punishment under the Eighth Amendment. *See id.* at ECF p. 2. For relief, Coyle again sought over $1 million in damages and other forms of monetary relief. *See id.* at ECF pp. 2, 13, 14, 15.

A few days after he filed the amended complaint, Coyle sent an email to the clerk's office (but addressed to the undersigned) in which he indicated that he had been in an accident and would be going to the hospital and then to rehabilitation. *See* Doc. No. 26. He also requested that the court continue the matter for at least 60 days. *See id.*

In response to the amended complaint, the defendants filed the instant motions to dismiss on January 5, 2023, and January 9, 2023.[10] *See* Doc. Nos. 28, 29. On January 12, 2023, the clerk of court docketed a "Motion for Postponement for Medical Emergency" filed by Coyle. *See* Doc. No. 30. In this motion, which was somewhat unclear, Coyle stated that he had been stabbed by a roommate, and he again indicated that he would be in the hospital and then go to rehabilitation for 30 to 40 days. *See id.*

Having reviewed Coyle's motion, the court entered an order granting Coyle's request and extending the time for him to file responses to the motions to dismiss to March 13, 2023. *See* Jan. 12, 2023 Order at 2, Doc. No. 31. On February 6, 2023, Coyle submitted a motion for appointment of counsel. *See* Doc. No. 32. The PrimeCare Defendants filed a response in opposition to the motion for appointment of counsel on February 15, 2023. *See* Doc. No. 33. To date, Coyle has not filed a response to the motions to dismiss, and they are now ripe for disposition.

---

[10] Although the record does not show when she was served with a summons and the complaint (or amended complaint) in this case, defense counsel for the PrimeCare defendants entered an appearance for Nurse Brown on January 5, 2023, and she joined the other PrimeCare defendants (except Dr. Wilbraham, who still does not appear to have been served) in moving to dismiss the amended complaint. From here forward, the court will refer to PrimeCare, Nurse Brown, Nurse Brighter, Nurse Shaeffer, Nurse Abdalghani, PA Culp, and PA Napolitano as the "PrimeCare Defendants."

## II.     DISCUSSION

Currently before the court are the defendants' separately filed motions to dismiss and Coyle's opposed motion for the appointment of counsel. In addition, Coyle has attempted to add new defendants and, apparently, a new cause of action in his amended complaint, which this court will have to screen pursuant to 28 U.S.C. § 1915(e)(2) because Coyle is proceeding *in forma pauperis*. Coyle also appears to have attempted to reassert a section 1983 municipal liability claim against MCCF. The court will first address the motions to dismiss, then screen Coyle's new claims (and his restated claim against MCCF), and finally address his motion for appointment of counsel.

### A.     <u>The Motions to Dismiss</u>

### 1.     Standard of Review – Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]"). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation omitted). "In ruling on a 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations." *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 735 (3d Cir. 2004) (citation and internal quotation marks omitted). Ultimately, a complaint must contain facts sufficient to nudge any claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "The defendant bears the burden of showing that no claim has been presented." *Hedges*, 404 F.3d at 750 (citation omitted).

In addition, in addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, ... contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally"

(citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

## 2.     Analysis

### a.     The PrimeCare Defendants' Motion to Dismiss

In their motion, the PrimeCare Defendants assert two grounds in support of their request that the court dismiss the claims asserted against them in the amended complaint with prejudice: First, they argue that the court should dismiss Coyle's section 1983 deliberate-indifference-to-serious-medical-needs claim against PrimeCare because Coyle has premised this claim on vicarious liability and not municipal liability, as he should have considering PrimeCare's relationship with the County; Second, they contend that the court must dismiss Coyle's medical malpractice claims because of his continued failure to file a certificate of merit for any named defendant. *See* Br. of PrimeCare Defs. in Supp. of Their Mot. to Dismiss Pl.'s Am. Compl. ("PrimeCare Defs.' Br.") at 5–9, Doc. No. 28-1. The court will address each claim in turn.

i.     *Coyle's Section 1983 Claim for Deliberate Indifference to His Serious Medical Needs*

In his amended complaint, Coyle alleges that PrimeCare, John Doe Prison Guards 1–5, and John Doe PrimeCare Employees 1–5 were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment.[11] *See* Am. Compl. at ECF pp. 12–13. The vehicle for

---

[11] Unfortunately, the allegations in the amended complaint do not indicate whether Coyle was serving a sentence or was a pretrial detainee while he was incarcerated at MCCF. This distinction has some significance insofar as the

Coyle to assert these claims in this court is 42 U.S.C. § 1983. Section 1983 provides in pertinent

part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege

and prove that a "person" deprived the plaintiff of a constitutional right while acting under color

of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff

---

Fourteenth Amendment applies to claims by pretrial detainees, and the Eighth Amendment applies to claims by individuals incarcerated "after sentence and conviction." *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)). Also, there may be a slightly different deliberate indifference standard under these amendments. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 n.5 (3d Cir. 2003) (explaining that Due Process Clause of Fourteenth Amendment "provides 'at a minimum, no less protection,' than is provided by the Eighth Amendment," but indicating that court was not "decid[ing] whether the Due Process Clause provides additional protections to pretrial detainees beyond those provided by the Eighth Amendment to convicted prisoners"); *see also Moore v. Luffey*, 767 F. App'x 335, 340 & n.2 (3d Cir. 2019) (evaluating deliberate-indifference -to-serious-medical-needs claim by pretrial detainee under Eighth Amendment standard; declining to address whether new standard applies to these types of claims by pretrial detainees; and discussing similarity of standards under Eighth and Fourteenth Amendments).

      Although Coyle's incarcerated status is unclear from the allegations in the amended complaint, the Unified Judicial System of Pennsylvania's publicly available criminal docket entries indicate that Coyle, who had been convicted (after a guilty plea) and sentenced by the Court of Common Pleas of Montgomery County in late-April 2019, was detained in MCCF for a probation/parole violation and was awaiting a hearing on the violation in October and November 2019. *See Commonwealth v. Gabriel C. Coyle*, No. CP-46-CR-4083-2018 (Montgomery Cnty. Ct. Com. Pl.), *available at*: https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-46-CR-0004083-2018&dnh=J%2F8yyZNbGEqi0HW1UUUi%2Bg%3D%3D (last visited March 17, 2023). Since Coyle was awaiting a probation/parole violation hearing, other federal district courts in this Commonwealth would consider Coyle a pretrial detainee for purposes of a section 1983 claim. *See Bowman v. Wetzel*, Civ. A. No. 2:20-cv-135, 2021 WL 5770200, at *3 n.5 (W.D. Pa. Dec. 6, 2021) (explaining that section 1983 plaintiff in custody on detainer for out-of-state probation violation was pretrial detainee); *Cupp v. Cnty. of Lycoming*, Civ. A. No. 3:20-cv-1784, 2021 WL 4478304, at *2 (M.D. Pa. Sept. 30, 2021) (considering plaintiff as pretrial detainee in section 1983 action where facts giving rise to claim occurred while plaintiff was in custody awaiting probation violation hearing); *see also United States v. Dobson*, 585 F.2d 55, 59 (3d Cir. 1978) ("[E]ven though we recognize that the basis for a parolee's detention is the underlying sentence from which [they] ha[ve] been paroled, until such time that the parole violator is recommitted after a hearing, and [their] incarceration thereby made certain and fixed as to duration, no term of imprisonment can be said to have commenced or resumed. In this respect a parole violator is no different than a pretrial detainee who is merely awaiting trial and who, until conviction and sentencing, cannot commence service of a term of imprisonment.").

      This court need not determine at this stage whether the Eighth or Fourteenth Amendment applies to Coyle's deliberate indifference claim because the PrimeCare Defendants' motion to dismiss does not require the court to reach that question. The motion requires the court to only examine whether Coyle has improperly attempted to assert a section 1983 claim against it based on vicarious liability.

must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

For Coyle to state a plausible constitutional claim based on the failure to provide adequate medical treatment, he must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

As indicated above, the PrimeCare Defendants are seeking to have the court dismiss Coyle's section 1983 deliberate indifference claim against only PrimeCare. *See* PrimeCare Defs.'

Br. at 6–7. While the amended complaint does not allege as such, PrimeCare appears to concede that it provides medical services for inmates at MCCF and, as such, acts under color of state law for purposes of section 1983. Even if it did not, the court would conclude that it is a state actor for purposes of section 1983. *See Neuen v. PrimeCare Med., Inc.*, No. 09-509, 2011 WL 1104118, at *8 (E.D. Pa. Mar. 24, 2011) ("Private entities that contract with municipalities to provide services to prison inmates, as well as employees of those entities, are acting 'under color of state law.'" (citation omitted)); *Roth v. PrimeCare*, Civ. A. No. 18-5010, 2019 WL 2745789, at *2 n.12 (E.D. Pa. June 27, 2019) ("The PrimeCare Defendants do not contest they are state actors, conceding they contract with Montgomery County to provide medical services to inmates incarcerated at the Montgomery County prison."); *see also Natale*, 318 F.3d at 583–84 (acknowledging that entity contracted to perform medical services for county jail is state actor for purposes of section 1983). Nevertheless, private health companies, like PrimeCare, "providing services to inmates[,] 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (per curiam) (quoting *Natale*, 318 F.3d at 583). Instead, a plaintiff must allege that the private health company violated their constitutional rights because of a custom or policy that it adopted. *See Cephas v. George W. Hill Corr. Fac.*, Civ. A. No. 09-6014, 2010 WL 2854149, at *2 (E.D. Pa. July 20, 2010) (explaining that *pro se* prisoner plaintiff seeking to assert claim against private health company providing medical services to county jail must allege that institutional policy or custom caused violation of plaintiff's rights; dismissing complaint because it did not contain any such allegations); *see also Natale*, 318 F.3d at 583 (analyzing section 1983 claim against private health care provider under municipal liability standard established in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)).

A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." *Id.* (internal quotation marks and alterations omitted). Regardless of whether a plaintiff is seeking to impose municipal liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz*, 915 F.2d at 850 (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom"). The plaintiff "must [also] identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).

In addition,

[t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." [*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 417 (1997)] (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act

affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice is likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18[.] (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390[ (1989)]); *see also Berg*[ *v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)] (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Natale*, 318 F.3d at 584 (third alteration in original) (internal footnote omitted).

As the PrimeCare Defendants point out in their brief, there are no allegations in the amended complaint about any policy or custom of PrimeCare, the lack of a policy by PrimeCare, or PrimeCare's failure to train its employees. *See* PrimeCare Defs.' Br. at 7; *see also* Am. Compl. at ECF pp. 1–13. Instead, Coyle's allegations relate to specific actions or inaction by PrimeCare employees, which could only be attributed to PrimeCare via vicarious liability. *See* Vicarious Liability, Black's Law Dictionary (11th ed. 2019) ("Liability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) based on the relationship between the two parties."). These types of allegations are wholly insufficient to potentially impose liability upon PrimeCare. Accordingly, the court will grant the PrimeCare Defendants' motion to dismiss Coyle's section 1983 deliberate indifference claim against PrimeCare and will dismiss that claim with prejudice.[12]

---

[12] A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). Here, Coyle has been aware since May 2022 that PrimeCare was alleging that he failed to state a plausible section 1983 claim for deliberate indifference to his serious medical needs against it because he had only alleged that it was vicariously liable for its employees' acts. *See* Br. of PrimeCare Defs. in Supp. of Their Mot. to Dismiss Pl.'s Compl. at 6–7, Doc. No. 14-1 (arguing that court should dismiss Coyle's section 1983 claim for deliberate indifference against it because he was attempting to use vicarious liability to hold it liable, and he had not included allegations which would establish liability under *Monell*). Despite this awareness, when Coyle filed his amended complaint, he included no new allegations against PrimeCare. Therefore, the court will not grant Coyle leave to potentially remedy the deficiencies in his section 1983 claim against PrimeCare by filing a second amended complaint because the court finds that doing so would be futile at this stage.

ii.   *Coyle's Failure to File a Certificate of Merit*

In count III of the amended complaint, Coyle purports to assert a medical malpractice claim under Pennsylvania law against the PrimeCare Defendants. *See* Am. Compl. at ECF pp. 14–15. Medical malpractice is

> the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services. *See, e.g., Hodgson v. Bigelow*, 335 Pa. 497, 7 A.2d 338 (1939). Thus, to prevail in a medical malpractice action, a plaintiff must "establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm." *Hightower–Warren*[ *v. Silk*, 698 A.2d 52, 54 (Pa. 1997)]. Because the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury. *Id.*

*Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003).

Here, the PrimeCare Defendants move to have the court dismiss Coyle's malpractice claims against them because he has not filed a certificate of merit relating to any defendant despite being notified of this issue and their intent to seek dismissal of these claims months ago. *See* PrimeCare Defs.' Br. at 7–9. Regarding certificates of merit, Rule 1042.3 of the Pennsylvania Rules of Civil Procedure requires a plaintiff, "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, . . . [to] file with the complaint or within sixty days after the filing of the complaint, a certificate of merit[.]"[13] Pa. R. Civ. P. 1042.3(a). This requirement "is substantive law under *Erie* [*v. Tompkins*, 304 U.S. 64

---

[13] Certificates of merit "assure that malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings." *Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000) (referencing New Jersey's affidavit of merit statute); *see also Almes v. Burket*, 881 A.2d 861, 866 (Pa. Super. 2005) ("The purpose of requiring a certificate of merit is to help eliminate frivolous claims of professional negligence and, possibly, to help hasten the prosecution of the same. Another recognized purpose of the rule can be found in *Speicher v. Toshok*, 63 Pa. D. & C.4th 435, 443 (2003), where it was stated that 'the purpose of these rules is to minimize the costs of defense and the time that a licensed professional must devote to the litigation until the plaintiff has been able to secure a certificate of merit.'").

(1938)] . . . and must be applied as such by federal courts[,]" *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 264–65 (3d Cir. 2011), including in cases involving *pro se* plaintiffs. *See, e.g.*, *Robinson v. Bureau of Health Care Servs.*, No. 22-1913, 2022 WL 17984477, at *3 (3d Cir. Dec. 29, 2022) (affirming district court's dismissal of *pro se* plaintiff's negligence claim against medical providers at prison because plaintiff failed to submit certificate of merit); *Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 943–44 (3d Cir. 2007) (affirming district court's dismissal of *pro se* plaintiff's claim against psychiatric clinic because plaintiff failed to comply with Rule 1042.3 by filing certificate of merit).

> When filing a certificate of merit, it must indicate that either:
>
> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3(a)(1)–(3) (internal notes omitted). Also, "[a] separate certificate of merit [must] be filed as to each licensed professional against whom a claim is asserted." Pa. R. Civ. P. 1042.3(b)(1). Further, if the plaintiff is pursuing a claim of vicarious liability, "additional [certificates of merit] must be filed as to each licensed professional for whom that defendant is

alleged to be vicariously liable."[14] *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 248 (E.D. Pa. 2008) (citing Pa. R. Civ. P. 1042.3(a)(2), Note).[15]

If a plaintiff pursuing a medical malpractice/professional negligence claim has failed to file a certificate of merit as required by Rule 1042.3, a defendant may seek a judgment of non pros in a Court of Common Pleas by first "fil[ing] a written notice of intention to file the praecipe [for entry of judgment of non pros] and serve it . . . on the party if unrepresented, no sooner than the thirty-first day after the filing of the complaint." Pa. R. Civ. P. 1042.6(a).[16] However, this process allowing a defendant to seek a judgment of non pros for a plaintiff's failure to file a certificate of merit

> is procedural in nature and accordingly inapplicable in federal practice. *See Abdulhay*[ *v. Bethlehem Med. Arts, L.P.*, No. Civ.A. 03-CV-4347, 2005 WL 2416012, at *7–10 (E.D. Pa. Sept. 28, 2005)]. A Pennsylvania state-law professional negligence matter proceeding in federal court is governed by federal procedural rules, which do not provide for a judgment of non pros or any similar form of procedural dismissal by the court clerk. *See Walsh v. Consolidated Design & Eng'g, Inc.*, Civ. A. No. 05–2001, 2007 WL 2844829, *5 n. 9 (E.D. Pa. Sept. 28, 2007); *McElwee Group, LLC v. Municipal Auth. of Borough of Elverson*, 476 F. Supp. 2d 472, 475 (E.D. Pa. 2007). Rather, the proper procedure in federal practice is to file with the Court a motion pursuant to Fed.R.Civ.P. 12(b) to dismiss the professional negligence claim without prejudice. *See Bresnahan* [*v. Schenker*, 498

---

[14] It is unclear from the allegations in the amended complaint whether any of the John Doe PrimeCare Employees 1–5 are licensed professionals, although, as explained later in this opinion, Coyle does allege that these unnamed PrimeCare employees deviated from the appropriate standard of care. As such, it would appear that Coyle would need to file certificates of merit for them as well.

[15] The Note accompanying Rule 1042.3(a)(2) states:

> A certificate of merit, based on the statement of an appropriate licensed professional required by subdivision (a)(1), must be filed as to the other licensed professionals for whom the defendant is responsible. The statement is not required to identify the specific licensed professionals who deviated from an acceptable standard of care. The purpose of this subdivision is to ensure that a claim of vicarious liability made against a defendant is supported by a certificate of merit. Separate certificates of merit as to each licensed professional for whom a defendant is alleged to be responsible are not required. Only a single certificate of merit as to a claim under subdivision (a)(2) is required.

Pa. R. Civ. P. 1042.3, Note.

[16] The defendant's notice must be in substantially the form provided by Pennsylvania Rule of Civil Procedure 1042.6(d).

F. Supp. 2d 758, 762–63 (E.D. Pa. 2007)]; *McElwee Group*, 476 F. Supp. 2d at 475; *see also Scaramuzza* [*v. Sciolla*, 345 F. Supp. 2d 508, 510–11 (E.D. Pa. 2004)].

*Stroud*, 546 F. Supp. 2d at 248; *see also Estate of Goldberg ex rel. Goldberg v. Nimoityn*, Civ. A. No. 14-980, 2014 WL 3732206, at *6 (E.D. Pa. July 29, 2014) ("Where a certificate of merit is not timely filed, the defendant may seek dismissal of the case without prejudice under Federal Rule of Civil Procedure 12(b)(6)." (citing *Stroud*, 546 F. Supp. 2d at 248)).

Generally, "a plaintiff's failure to comply with Rule 1042.3 requires dismissal of any malpractice claim." *Bennett v. PrimeCare Med., Inc.*, Civ. No. 3:18-CV-517, 2018 WL 6072126, at *10 (M.D. Pa. Sept. 14, 2018). However,

> Rule [1042.3] is nonetheless subject to certain equitable exceptions:

>> ... we have always understood that procedural rules are not ends in themselves, and that the rigid application of our rules does not always served the interests of fairness and justice. It is for this reason that we adopted Rule 126, which provides in pertinent part that "[t]he court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa. R. Civ. P. No. 126. With this language, we incorporated equitable considerations in the form of a doctrine of substantial compliance into Rule 126, giving the trial courts the latitude to overlook any "procedural defect" that does not prejudice a party's rights. Thus, while we look for full compliance with the terms of our rules, we provide a limited exception under Rule 126 to those who commit a misstep when attempting to do what any particular rule requires. Moreover, we made Rule 126 a rule of universal application, such that the trial court may disregard any such procedural defect or error at every stage of any action or proceeding to which the civil procedural rules apply.

> [*Womer v. Hilliker*, 908 A.2d 269, 276 (Pa. 2006) (citations omitted).]

*Booker v. United States*, 366 F. App'x 425, 427–28 (3d Cir. 2010) (per curiam).

In this case, Coyle needed to file a certificate of merit as to at least all the individual, non-John Doe PrimeCare defendants because they are licensed professionals. *See* Pa. R. Civ. P.

1042.1(c)(1) (defining "licensed professional").[17] The PrimeCare Defendants notified Coyle of their intent to seek dismissal of his medical malpractice claims back on May 19, 2022. *See* Doc. No. 13. At no point since that time has Coyle even attempted to comply with Rule 1042.3, nor has he specifically sought an extension of time to comply with his obligations under that Rule. The court understands that some personal matters and other health issues have caused issues for Coyle in prosecuting this case, and that he has tried, albeit unsuccessfully, to obtain counsel to represent him. But it has been approximately ten months since he was notified of his failure to file certificates of merit, and the PrimeCare Defendants identified the issue again in the instant motion to dismiss. Coyle has not taken any steps to comply with Rule 1042.3 and, thus, he falls far short of the sort of "substantial compliance" with Rule 1042.3 that would allow this court to equitably extend the time for him to remedy this defect. Accordingly, the court will grant the motion to dismiss Coyle's medical malpractice claims in the complaint as to PrimeCare; Nurses Brown, Brighter, Shaeffer, and Abdalghani; PA Culp; and PA Napolitano, and will dismiss these claims with prejudice.[18]

---

[17] Rule 1042.1(c)(1) specifically mentions nurses as licensed professionals. *See* Pa. R. Civ. P. 1042.1(c) ("As used in this chapter, 'licensed professional' means (1) any person who is licensed pursuant to an Act of Assembly as . . . (vii) a nurse[.]"). This Rule also defines a "licensed professional" as "a health care provider as defined by Section 503 of the Medical Care Availability and Reduction of Error (MCARE) Act, 40 P.S. § 1303.503[.]" Pa. R. Civ. P. 1042.1(c)(1)(i). Section 503 of the MCARE Act defines a "[h]ealth care provider" as:

> A primary health care center, a personal care home licensed by the Department of Public Welfare pursuant to the act of June 13, 1967 (P.L. 31, No. 21), known as the Public Welfare Code, or a person, including a corporation, university or other educational institution licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, a certified nurse midwife, a podiatrist, hospital, nursing home, birth center, and an officer, employee or agent of any of them acting in the course and scope of employment.

40 P.S. § 1303.503. This definition would include corporations providing health care as well as physicians. *See id.* In addition, physician's assistants, while not specifically mentioned in the definition of a "licensed professional" in Rule 1042.1(c), are "nationally certified and state-licensed medical professional[s] who practice medicine on healthcare teams with physicians and other providers and who can prescribe medication in all 50 states, the District of Columbia and all U.S. territories, with the exception of Puerto Rico." *Capetillo v. PrimeCare Med., Inc.*, Civ. A. No. 14-2715, 2014 WL 5393992, at *3 n.6 (E.D. Pa. Oct. 23, 2014) (citation and internal quotation marks omitted). Therefore, they also are licensed professionals under Rule 1042.3.

[18] A dismissal for the failure to file a certificate of merit is usually a dismissal without prejudice. "However, dismissal with prejudice is proper when the statute of limitations has run on the claim." *Morrison v. United States*, No. 1:20-cv-1571, 2021 WL 4192086, at *7 (M.D. Pa. Sept. 15, 2021) (citing *Smith v. Bolava*, Civ. A. No. 14-5753, 2015 WL

b.       The County's Motion to Dismiss

The County has moved to dismiss with prejudice Coyle's section 1983 municipal liability

claim against it because it contends that he has failed to plausibly plead that a policy, practice or

custom of the County, or a failure to train the County's employees, led to the violation of his

constitutional rights. *See* Mem. of Law in Supp. of the Mot. of Def. Montgomery Cnty., Pa. to

Dismiss Pl.'s 2d Am. Compl. at 8–16, Doc. No. 29. As with Coyle's section 1983 claims against

PrimeCare, to assert a municipal liability claim against the County Coyle must plausibly allege

that it has a policy or custom, or lacked a policy, which caused the violation of his constitutional

rights. *See Monell*, 436 U.S. at 694 ("We conclude, therefore, that a local government may not be

sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when

execution of a government's policy or custom, whether made by its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy, inflicts the injury that the government

as an entity is responsible under § 1983."). Thus, Coyle "must identify [the] custom or policy, and

---

2399134, at *3 (E.D. Pa. May 20, 2015)). Here, the statute of limitations for Coyle's medical malpractice claims is
two years. *See* 42 Pa. C.S. § 5524 (providing two-year limitations period for, *inter alia* "action[s] to recover damages
for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence
or negligence of another" and "[a]ny other action[s] or proceeding[s] to recover damages for injury to person or
property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding
sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified
in this subchapter"). The allegations in the amended complaint show that Coyle knew he may have been injured by
the PrimeCare Defendants no later than the end of 2019. As such, he would be precluded from filing a new medical
malpractice claim against them in 2023 even if he submitted certificates of merit.
     In addition, although the PrimeCare Defendants did not reference Dr. Wilbraham (as he has yet to be served
with process) and "John Doe PrimeCare Employees 1–5" in their motion to dismiss, despite Coyle also asserting
medical malpractice claims against them in his amended complaint, the court must dismiss any medical malpractice
claims against them as well. As Coyle is proceeding *in forma pauperis*, "the court shall dismiss the case ***at any time***
if the court determines that . . . the action . . . (i) is frivolous or malicious; [or] fails to state a claim on which relief
may be granted." 28 U.S.C. § 1915(e)(2). Here, although Coyle has yet to identify these Doe defendants, he alleges
that they all provide medical services at MCCF. *See* Am. Compl. at ¶¶ 10–14. In addition, Coyle is alleging that these
unnamed defendants acted outside the accepted, applicable professional standard of care. *See id.* at ¶¶ 70–73. As the
certificate-of-merit requirement applies to nurses, physician's assistants, and physicians, "[i]t would be folly for this
court to find that [Coyle] should be excused from filing the required certificate of merit" as to these defendants as
well. *Bartoletti v. Cnty. of Beaver*, Civ. A. No. 07-439, 2008 WL 3833878, at *3 (W.D. Pa. Aug. 15, 2008).
Accordingly, the court will dismiss with prejudice Coyle's medical malpractice claims against Dr. Wilbraham and
John Doe PrimeCare Employees 1–5 as well.

specify what exactly that custom or policy was" to satisfy the applicable pleading standard. *McTernan*, 564 F.3d at 658 (citation omitted).

In the amended complaint, Coyle claims that the County "lack[ed] sufficient policies and training relating to: [(1)] Observing and treating individuals suffering pain in their extremities; [(2)] Observing and treating individuals exhibiting signs of an infection; [(3)] Properly receiving and recording medical slips from inmates complaining of medical problems; [and (4)] Providing medical care to acutely injured individuals[.]" Am. Compl. at ¶ 66. He also alleges that that County "failed to enforce policies about allowing inmates given medical orders for wheelchairs to use their wheelchairs." *Id.* at ¶ 67. Due to the lack of policies and training, Coyle asserts that MCCF "prison guards are woefully unequipped to handle situations involving inmates suffering severe medical issues and are ignorant of the limits of their lawful authority." *Id.* at ¶ 68. Coyle further avers that the County's "lack of policies and training were a moving force behind the deprivation of [his] constitutional rights." *Id.* at ¶ 69.

After reviewing these allegations and the remainder of the amended complaint, the court agrees with the County that Coyle has failed to plead a plausible section 1983 municipal liability claim against it. Coyle has not identified any "policy" issued by a decision-maker possessing final authority. *See Pembaur*, 475 U.S. at 481 ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). Instead, Coyle alleges that the lack of certain policies by the County caused violations of his constitutional rights. *See* Am. Compl. at ECF pp. 13–14.

In addition, Coyle has failed to plausibly plead that the County had a "custom" insofar as there was a "course of conduct, although not specifically endorsed or authorized by law, [that was]

so well-settled and permanent as virtually to constitute law." *Estate of Roman*, 914 F.3d at 798 (citation omitted). He also does not allege that the County "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [his] injury." *Id.* In fact, there are no allegations in the amended complaint about the conduct of employees at MCCF except as relating to their treatment of Coyle. As such, Coyle has not pleaded a viable municipal liability claim based on the County having a custom which led to his injuries.

Despite not identifying a policy or a custom, Coyle could still proceed on his municipal liability claim if he plausibly pleaded that the County lacked policies or failed to train its employees, and that the lack of policies or failure to train was a moving force in the violations of his constitutional rights. *See Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) ("Municipal liability can be predicated on a failure to train." (citing *City of Canton v. Harris*, 489 U.S. 378 (1979))); *Caiby v. Haidle*, Civ. No. 3:18-cv-1120, 2022 WL 2987908, at *10 (M.D. Pa. July 27, 2022) ("To successfully set forth a § 1983 claim against [the] County, [the plaintiff] must raise a *Monell* claim alleging that the County is a governmental entity and thus a 'person' under § 1983, and must allege that either a policy, *or lack of policy*, of the County led to the violation of his constitutional rights." (emphasis added) (citing *Monell*, 436 U.S. at 658)); *see also Natale*, 318 F.3d at 585 (indicating that "[a] reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs"). In failure-to-train cases,

> a municipality is only liable for failing to train when that "failure amounts to 'deliberate indifference to the [constitutional] rights of persons with whom the police come in contact.'" [*Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1028 (3d Cir. 1991 ("*Colburn II*")] (quoting *City of Canton*, 489 U.S. at 388, 109 S.Ct. 1197).

> Only where a municipality's failure to train its employees in relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.... Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983.

> *City of Canton*, 489 U.S. at 389, 109 S.Ct. 1197. Therefore, not all failures or lapses in training will support liability under § 1983. Moreover, "'the identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'" *Colburn II*, 946 F.2d at 1028 (quoting *City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197). In *City of Canton*, the Court stressed that a plaintiff asserting a failure to train theory is "required to prove that the deficiency in training actually caused [the constitutional violation, i.e.,] the [police custodian's] indifference to her medical needs." *City of Canton*, at 391, 109 S.Ct. 1197.

*Woloszyn*, 396 F.3d at 324–25 (all alterations except second alteration in original).

In this case, the court understands that Coyle believes that his medical needs were either ignored or poorly treated while he was at MCCF, but that does not mean that he has included sufficient facts to state a plausible claim for municipal liability against the County. The primary deficiency in Coyle's municipal liability allegations is that they are conclusory in nature and fail to provide sufficient facts about the County's alleged lack of policies and failure to train. In addition, his claims about the County lacking policies or failing to train its employees are, in certain instances, belied by his own allegations about what occurred in MCCF.

For example, Coyle alleges that the County lacked sufficient policies and training relating to "[o]bserving and treating individuals suffering pain in their extremities [and] . . . exhibiting signs of an infection." Am. Compl. at ¶ 66(a)–(b). Excluding the word "sufficient," the County clearly had policies and training in place relating to observing and treating individuals because from November 2, 2019, through the time Coyle was transported to the hospital on November 16, 2019, Coyle was observed numerous times by PrimeCare medical staff, had lab work and blood

cultures performed, was prescribed a higher dose of Ibuprofen, two antibiotics, and a corticosteroid, and was examined by a doctor. He was also ordered to have a wheelchair by Nurse Brown, even if John Doe Prison Guards 1–5 did not let him use it. There is no indication in the amended complaint that Coyle was not observed or treated during his time at MCCF. There are no allegations in the amended complaint that the County lacked policies and training to observe and treat anyone other than him. While Coyle may disagree with the results of those observations and the prescribed treatments, he has not plausibly alleged that the County lacked policies and training relating to observations and treatment.

Coyle's next asserted lack of a policy or failure to train relates to medical slips. *See* Am. Compl. at ¶ 66(c). This contention is based on Coyle's allegations that he submitted medical slips to John Doe Prison Guards 1–5 and John Doe PrimeCare Employees 1–5 from October 22, 2019, through November 1, 2019, but did not receive any medical attention, and that the MCCF had not "record[ed]" or "mention[ed]" these slips.[19] *See id.* at ¶¶ 26–29. It is undeniably concerning to the court that any incarcerated person would submit daily medical slips seeking medical attention for so many days without a response. At the same time, it does not mean that the County lacked a policy or training relating to processing medical slips. Instead, Coyle is speculating that a lack of a policy or a lack of sufficient training is what led to the lack of response for those days. Similarly, as Coyle alleges that his medical slips during this period are unavailable to him, he also jumps to the conclusion, with no factual allegations to support his claim, that the County lacked sufficient policies and its employees lacked sufficient training regarding recording and maintaining medical slips. Coyle does not allege that this also occurred with other individuals incarcerated at MCCF;

---

[19] It is unclear why Coyle indicates that there was no response to his medical slips up through November 2, 2019, when he also alleges that Nurse Brown visited him on that date. *See* Am. Compl. at ¶¶ 27, 29, 30.

instead, he is manufacturing claims about a lack of policies or lack of training based only on what happened to him.

Coyle's final claim of a lack of a policy or lack of sufficient training is his broad claim that the County lacked sufficient policies and its employees lacked sufficient training in "[p]roviding medical care to acutely injured individuals." Am. Compl. at ¶ 66(d). Standing alone, this claim for municipal liability is insufficient because it is overly broad and conclusory. Nevertheless, even in conjunction with Coyle's factual allegations in the amended complaint, it is still insufficient. As already stated, there are no allegations that the County did not have a policy in place to address incarcerated individuals who suffered from acute injuries. Also, while Coyle disagrees with the treatment he received while at MCCF, he was visited by nurses and physician's assistants, prescribed pain medication (even if it apparently did not ultimately alleviate his pain), had blood tests conducted which showed an elevated white blood cell count and, for which, he received two antibiotics and a corticosteroid, and was examined by a licensed doctor who apparently concluded that his examination of Coyle did not show the level of severity of Coyle's condition as Coyle had expressed to him. Overall, even if Coyle's allegations state a plausible cause of action for deliberate indifference to his serious medical needs, it does not lead to Coyle having also plausibly alleged that the County's failure to properly train its employees and have other policies in place were a cause of the injuries he complained of in this case.

The only other possible municipal liability claim Coyle identifies in his amended complaint is that the County is liable for failing to enforce its policies about allowing inmates to use wheelchairs if they are ordered to be able to use one. *See* Am. Compl. at ¶ 67. It appears this allegation relates to when Nurse Brown ordered that Coyle be provided with a wheelchair on November 2, 2019, only to have John Doe guards 1–5 take that wheelchair away after his visit

with Nurse Brown. *See id.* at ¶¶ 33–34. He also alleges that on an unknown date and time, Mr. White Shirt refused to give him a wheelchair when Coyle was asked to go to the medical unit and could not walk there on his own. *See id.* at ¶ 77. Instead of providing Coyle with a wheelchair, Mr. White Shirt wrote up Coyle and disciplined him by taking his cell phone and suspending his commissary privileges for two weeks. *See id.* Later that day, Coyle acknowledges that he received a wheelchair to get to the medical unit, but when he came through the door (presumably in the wheelchair), John Doe Prison Guards 1–5 told him to get out of the chair and head back to his cell. *See id.* at ¶ 78.

None of these allegations, alone or together, are sufficient to state a plausible municipal liability claim against the County for multiple reasons. First, Coyle does not describe the County's wheelchair policy for individuals incarcerated at MCCF. Second, Coyle's allegations show that he received a wheelchair from someone on the day Mr. White Shirt would not give him one, even if it was not promptly provided to him and unwarranted discipline was imposed upon him for requesting it. Third, Coyle alleges that John Doe Prison Guards 1–5 took away his wheelchair shortly after Nurse Brown gave him permission to have one on November 2, 2019. *See id.* at ¶ 34. Yet, there is no allegation, during any of the numerous visits he had with PrimeCare medical personnel after that date, that he ever asked them to confirm that he was entitled to use a wheelchair or to otherwise take steps to ensure the guards permitted him to use it. In fact, it is unclear from November 2, 2019, through the time Coyle was transported to the hospital, whether he even required a wheelchair to move around MCCF. Finally, there is no allegation he ever attempted to have anyone at MCCF enforce any purported wheelchair policy, that any other incarcerated individuals at MCCF had issues with access to wheelchairs, and he does not otherwise allege that the County knew or should have known that correctional officers were not complying with

whatever policy was in place (presuming there was a policy) regarding wheelchairs. At bottom, Coyle's failure-to-enforce-policies municipal liability claim is purely speculative and conclusory, and it does not, even giving Coyle every reasonable inference from, and liberal interpretation of, his allegations, support a claim for municipal liability against the County. Accordingly, the court will grant the County's motion to dismiss and will dismiss Coyle's section 1983 municipal liability claim against it.[20]

### B.    Screening of the New Allegations/Claims in the Amended Complaint

Because the court has already granted Coyle leave to proceed *in forma pauperis*, the court must examine whether any new claims included in the amended complaint against any new or previously named defendants are frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). An amended complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether an amended complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's

---

[20] As with Coyle's section 1983 claim against PrimeCare, he has been aware since May 2022 that the County was seeking dismissal of his municipal liability claim against it based on its contention that he had failed to plead a plausible clam for municipal liability under *Monell*. *See* Mem. of Law in Supp. of Mot. of Def. Montgomery Cnty., Pa. to Dismiss Pl.'s Compl. at 5–10, Doc. No. 15. Therefore, based on the nature of Coyle's claims and his conduct in this case thus far, the court will not grant him leave to amend this cause of action because the court finds that it would be futile.

> motivations at the time of the filing of the lawsuit to determine whether the action
> is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing an amended complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, as already explained above, to survive dismissal, "a[n amended] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 57). Additionally, as Coyle is proceeding *pro se*, the court must liberally construe the allegations set forth in the amended complaint. *See Shorter*, 12 F.4th at 374 ("At this early stage of the litigation, we accept the facts alleged [in the *pro se* amended] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that [amended] complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)).

In the amended complaint, Coyle purports to assert claims for relief against the Hospital and Surgery Team, as well as against Mr. White Shirt. *See* Am. Compl. at ECF pp. 1–2. He also makes a passing reference to an Eighth Amendment cruel and unusual punishment violation. *See id.* at ECF p. 2. Further, Coyle appears to once again be asserting a section 1983 municipal liability claim against MCCF. The court will address each of these possible claims below.

1.    Claims Against the Hospital and Surgery Team

It appears that Coyle is claiming that the Hospital and Surgery Team were negligent in treating him because "while using a scope with a light and camera, [they] missed the infection/fracture about two inches where the infection was that they cleaned out." Am. Compl. at ECF p. 79. Coyle alleges that upon his admission to Nazareth Hospital on December 28, 2019, he was "told that [his] left femur was fractured and [i]t was not new but weeks old." *Id.* at ¶ 80.

These allegations sound in professional negligence insofar as Coyle appears to be alleging that the Hospital and Surgery Team failed to identify a fracture in his left femur even though they had performed a procedure on his left leg relating to his infection and sepsis. It does not appear that Coyle is attempting to assert a section 1983 claim for a constitutional violation against these defendants because there are no allegations in the amended complaint remotely suggesting that they acted under color of state law. *See West*, 487 U.S. at 49 ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed ***by a person acting under color of state law***." (emphasis added)). Presuming that Coyle is bringing professional negligence claims against the Hospital and Surgery Team, he has a substantial issue with proceeding forward on these claims because they are very likely barred by the applicable two-year statute of limitations.

Although the statute of limitations is ordinarily an affirmative defense, a district court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the operative complaint. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) ("A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint."); *Whitenight v. Cmwlth. of Pa. State Police*, 674 F. App'x 142, 144 (3d Cir. 2017) (per curiam) ("When screening

a complaint under § 1915, a district court may *sua sponte* dismiss the complaint as untimely under the statute of limitations where the defense is obvious from the complaint and no development of the factual record is required." (citations omitted)); *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (affirming district court's denial of leave to amend where proposed amended complaint would not survive renewed motion for judgment on pleadings because it would be barred by statute of limitations).

As this court explained above, the statute of limitations to bring a professional liability/medical malpractice/personal injury claim in Pennsylvania is two years. *See* 42 Pa. C.S. § 5524(2), (7). This two-year limitations period

> generally begins to run "when an injury is inflicted." *Wilson v. El-Daief*, 600 Pa. 161, 964 A.2d 354, 361 (2009). But "where the plaintiff's injury or its cause was neither known nor reasonably ascertainable," the "discovery rule" tolls the statute of limitations. *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018); *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850, 858 (2005). The discovery rule accordingly protects parties who are reasonably unaware of latent injuries or suffer from injuries of unknown etiology. *Nicolaou*, 195 A.3d at 892 & n.13; *Fine*, 870 A.2d at 858.
>
> Under the Pennsylvania discovery rule, the "commencement of the limitations period is grounded on 'inquiry notice' that is tied to 'actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice to the full extent of the injury, the fact of actual negligence, or precise cause.'" *Gleason v. Borough of Moosic*, 609 Pa. 353, 15 A.3d 479, 484 (Pa. 2011) (quoting *Wilson*, 964 A.2d at 364). The statute of limitations accordingly begins to run when the plaintiff knew or, exercising reasonable diligence, should have known (1) he or she was injured and (2) that the injury was caused by another. *See Coleman v. Wyeth Pharms.*, 6 A.3d 502, 510–11 (Pa. Super. Ct. 2010). That "reasonable diligence" standard is an objective one, but at the same time "sufficiently flexible" to "take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Fine*, 870 A.2d at 858 (internal citation omitted); *see also Nicolaou*, 195 A.3d at 893. Plaintiffs generally will not be charged with more medical knowledge than their doctors or health care providers have communicated to them. *See Wilson*, 964 A.2d at 365. A plaintiff bears the burden of showing her reasonable diligence. *Nicolaou*, 195 A.3d at 893.

*Adams v. Zimmer US, Inc.*, 943 F.3d 159, 163–64 (3d Cir. 2019).

Here, Coyle acknowledges that he knew his left femur was fractured as of December 28, 2019. *See* Am. Compl. at ¶ 80. As such the two-year limitations period began to run on that date, giving Coyle until December 28, 2021, to file a complaint against the Hospital and Surgery Team. As Coyle did not file his amended complaint naming the Hospital and Surgery Team as defendants until December 26, 2022, the applicable statute of limitations seemingly bars his claims against them.

There is, however, one potential avenue that could save Coyle's claims in the amended complaint against the Hospital and Surgery Team from being dismissed with prejudice. "Rule 15(c) [of the Federal Rules of Civil Procedure] permits amended pleadings to relate back past statutes of limitations such that an amendment filed outside the limitations period is deemed timely." *S.E. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 345 (3d Cir. 2021) (citing 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1497). Thus, if Coyle can show that the Hospital and Surgery Team "received such notice of [this] action that [they] will not be prejudiced in defending on the merits," his claims in the amended complaint could relate back to his original complaint, which was filed within the two-year limitations period, because those claims arguably "arose out of the conduct, transaction, or occurrence set out . . . in the original [complaint]." Fed. R. Civ. P. 15(c)(1)(B), (C).[21] On the other hand, if the Hospital and

---

[21] Rule 15(c) of the Federal Rules of Civil Procedure governs whether an amendment to a pleading can relate back to an original pleading, and provides in pertinent part as follows:

    **(c) Relation Back of Amendments.**
     **(1)** *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
      **(A)** the law that provides the applicable statute of limitations allows relation back;
      **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
      **(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
       **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and

Surgery Team did not receive actual or constructive notice of Coyle's original complaint within 90 days of January 7, 2022, which was the date this court entered the order granting the IFP Application and deeming Coyle's complaint filed, *see* Doc. No. 6, his claims against them are barred. Since there is no indication what occurred, if anything, regarding notice of this lawsuit by the Hospital or Surgery Team, the court will provide Coyle with the opportunity to show that these received notice or acknowledge to the court that they did not and that the court should dismiss any professional negligence claims against them.[22]

### 2.    Claims Against Mr. White Shirt

Regarding Coyle's claim against Mr. White Shirt, it appears that Coyle is alleging that this defendant was deliberately indifferent to his serious medical needs when he did not give Coyle a wheelchair so he could go to the medical unit and instead wrote him up. *See* Am. Compl. at ¶ 77. A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.

Coyle has not alleged a plausible claim for deliberate indifference against Mr. White Shirt under any of the three bases for liability for a correctional officer's deliberate indifference. First,

---

> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). The party amending the pleading has the burden to show that the amended pleading relates back to the original pleading under Rule 15(c). *See Al-Dahir v. F.B.I.*, 454 F. App'x 238, 242 (5th Cir. 2011) (per curiam) ("Plaintiffs have the burden to demonstrate that an amended complaint relates back under Rule 15(c)."); *see also Anderson v. City of Philadelphia*, 65 F. App'x 800, 802 (3d Cir. 2003) (per curiam) ("Anderson cannot rely upon Rule 15(c)(3) because she cannot meet her burden of showing that the proposed defendant had either actual or constructive notice of her lawsuit.").

[22] If these claims were to somehow relate back to the original complaint, Coyle would still need to submit certificates of merit for the Hospital and Surgery Team, which he had not yet done despite the passage of the 60-day period to file certificates of merit provided for in Rule 1042.3.

Coyle does not allege that Mr. White Shirt knew of Coyle's need for medical treatment and refused to provide it. Presumably, Coyle could not even make such an allegation because there is no indication that Coyle needed treatment that Mr. White Shirt did not provide. Second, Coyle does not allege that Mr. White Shirt delayed necessary medical treatment for a non-medical reason. Coyle does not explain why he was asked to go the medical unit; therefore, the court cannot reasonably infer that he was obtaining treatment. Finally, there is no allegation that Mr. White Shirt prevented Coyle from receiving needed or recommended medical treatment. As Coyle acknowledges, after Mr. White Shirt wrote him up, Coyle received a wheelchair to go to the medical unit. *See* Am. Compl. at ¶ 78. He does not allege that he was injured because of this delay, did not timely receive medical treatment because of this delay, or that anything adverse happened other than the alleged retrieval of his cell phone and suspension of commissary privileges.

In addition to the above, while Coyle's allegations illustrate an objectionable interaction between him and Mr. White Shirt, they do not rise to the level where the court can reasonably infer that Mr. White Shirt knew of and disregarded an excessive risk to Coyle's health or safety by not initially giving him a wheelchair to use (or by writing him up). Further, Coyle's allegations do not plausibly show that Mr. White Shirt was even aware that Coyle had a serious medical need because, even though Coyle alleges that he could not walk at the time, there is no indication that the failure to give him a wheelchair at that time could be expected to lead to substantial and unnecessary suffering. At bottom, Coyle has failed to plead a plausible deliberate indifference claim against Mr. White Shirt, and the court will dismiss this claim from the amended complaint for the failure to state a claim.[23]

---

[23] As the court mentioned regarding Coyle's claims against the hospital and the surgical team, there is a potential statute of limitations issue with this claim. Coyle's section 1983 claims are subject to the applicable state's statute of limitations for personal injury actions. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (concluding that statute of limitations for section 1983 actions "is governed by the personal injury tort law of the state where the cause of action

### 3.   Section 1983 Claim Under the Eighth Amendment

Coyle makes a passing reference to the Eighth Amendment's protections against cruel and unusual punishment in the amended complaint. *See* Am. Compl. at ECF p. 2. The Eighth Amendment prohibits states from inflicting "cruel and unusual punishments" on those convicted of crimes. *See Rhodes v. Chapman*, 452 U.S. 337, 345 (1981) ("The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments: they cannot be 'cruel and unusual.'").

It is unclear in the amended complaint why Coyle mentions the Eighth Amendment, but he does seem to indicate that he is attempting to assert a cause of action for an Eighth Amendment violation. *See* Am. Compl. at ECF p. 2. The allegations in the paragraphs which were not part of Coyle's original complaint do not contain any factual allegation that would rise to the level of cruel and unusual punishment. It is possible that Coyle is alleging that Mr. White Shirt inflicted cruel and unusual punishment upon him by taking his cell phone and suspending his commissary privileges for two weeks. *See id.* at ¶ 77. If that is truly Coyle's Eighth Amendment claim, he has failed to state a plausible claim for relief.

---

arose"). Since Coyle's claims arose in Pennsylvania, the court applies Pennsylvania's relevant limitations period, which, as twice indicated, is two years. *See Wisniewski*, 857 F.3d at 157 (stating that "[t]he statute of limitations applicable to § 1983 claims in Pennsylvania is two years" (citation omitted)). This two-year limitations period accrues "when a plaintiff has a complete and present cause of action, that is, when [the plaintiff] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotation marks and citation omitted). In general, this means that the statute of limitations "accrues when the plaintiff knew or should have known of the injury upon which [the plaintiff's] action is based." *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

   As with Coyle's other claims in this case, he knew about the alleged deliberate indifference to his serious medical needs by Mr. White Shirt, no later than December 28, 2019, when he was apparently released from incarceration and went to Nazareth Hospital. *See* Am. Compl. at ¶ 80. Therefore, presuming Coyle could state a plausible claim for deliberate indifference against Mr. White Shirt, the only way that his proposed amendment is not subject to the limitations bar would be if the amendment relates back under Federal Rule of Civil Procedure 15(c), which would again require this currently unnamed defendant to have received actual or constructive notice of this lawsuit within 90 days of January 7, 2022.

   The court will be scheduling a telephone conference with counsel and Coyle to discuss the status of this matter. As such, the court's dismissal of this claim against Mr. White Shirt will be without prejudice until the court can speak to Coyle about this claim.

Under the Eighth Amendment, prison officials have a duty to provide prisoners with "the minimal civilized measure of life's necessities," *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (citation omitted), which include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). Coyle's loss of his phone or suspension of his commissary privileges is not a deprivation of "the minimal civilized measure of life's necessities." *Porter*, 974 F.3d at 441. Accordingly, Coyle has failed to state a plausible Eighth Amendment claim against Mr. White Shirt.

4.    Possible Section 1983 Municipal Liability Claim Against MCCF

In this court's January 7, 2022 Order, the court dismissed with prejudice any section 1983 claims Coyle had against MCCF. *See* Jan. 7, 2022 Order at ¶ 3. As the court explained:

> The court dismisses with prejudice the plaintiff's claims against the Montgomery County Correctional Facility because it is not a "person" amendable to suit under section 1983. *See Ignudo v. McPhearson*, No. Civ.A. 03-5459, 2004 WL 1320896, at *2 (E.D. Pa. June 10, 2004) ("[Plaintiff] also names as a Defendant the George W. Hill Correctional Facility. The George W. Hill Correctional Facility is not a legal entity susceptible to suit."); *see also Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (per curiam) (concluding that district court properly dismissed claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability[, the county prison] is not a person capable of being sued within the meaning of § 1983") (internal citations omitted); *Mincy v. Deparlos*, 497 F. App'x 234, 239 (3d Cir. 2012) (per curiam) (determining that district court properly concluded that county prison is not "person" within meaning of section 1983).

*Id.* at ¶ 3 n.2. Yet, despite dismissing with prejudice Coyle's section 1983 claims against MCCF, Coyle again listed it as a defendant in his amended complaint. *See* Am. Compl. at ECF p. 1. This could have merely been an oversight on Coyle's part as his amended complaint consists of his original complaint with two new pages attached to it. Nevertheless, to the extent that Coyle is attempting to reassert any section 1983 claims against MCCF, these claims are against dismissed with prejudice for the failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2).

### C.   Coyle's Motion for Appointment of Counsel

Coyle has moved to have the court appoint counsel for him in this matter. *See* Doc. No. 32. He claims that the court should appoint him counsel because he lacks a legal education and he wanted to "have a level playing field to prove [his] claim." Mot. for Appointment of Counsel at ECF p. 1, Doc. No. 32. As explained below, the court will deny this motion for appointment of counsel at this time.

Civil litigants do not have a constitutional right to counsel. *See Parham v. Johnson*, 126 F.3d 454, 456 (3d Cir. 1997) ("The Supreme Court has not recognized nor has the court of appeals found a constitutional right to counsel for civil litigants." (citation omitted)). Nevertheless, "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). District courts have "'broad discretion' to determine whether appointment of counsel in a civil case would be appropriate." *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (quoting *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)). In making this determination, the court must "consider as a threshold matter the merits of the plaintiff's claim." *Tabron*, 6 F.3d at 154; *see also Mayer v. Corbett*, 186 F. App'x 262, 264 (3d Cir. 2006) (per curiam) (denying motion for appointment of counsel because appellant "has not made a threshold showing that his appeal has arguable merit in fact and law" (citing *Tabron*)). If the plaintiff passes this initial threshold, the court must analyze these factors: (1) "[t]he plaintiff's ability to present his or her case;" (2) "the difficulty of the particular legal issues;" (3) "the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation;" (4) whether the "case is likely to turn on credibility determinations;" (5) whether "the case will require testimony from expert witnesses;" (6) whether "the claims are likely to require extensive discovery and compliance with complex discovery rules;" and (7) the "plaintiff's capacity to retain counsel on his or her

behalf." *Tabron*, 6 F.3d at 155–57; *Montgomery*, 294 F.3d at 499. Also, "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Montgomery*, 294 F.3d at 499 (citing *Parham*, 126 F.3d at 458).

As indicated above, the court must first consider the merits of Coyle's claim(s). Taking the court's rulings on the motions to dismiss and the screening of the amended complaint under 28 U.S.C. § 1915(e)(2), Coyle's only remaining causes of action are his section 1983 claims for deliberate indifference to his serious medical needs against John Doe Prison Guards 1–5 and John Doe PrimeCare Employees 1–5, related to their conduct in not responding to his requests for medical attention from October 22, 2019, through November 2, 2019, and for John Doe Prison Guards 1–5 not allowing him to use a wheelchair starting on November 2, 2019, despite Nurse Brown ordering one for him on that date. *See* Am. Compl. at 11–13. He may still have claims he can pursue against the Hospital and Surgery Team, and the court must still determine whether he can remedy his allegations against Mr. White Shirt.

Presuming that at least Coyle's deliberate indifference claim against the John Doe defendants has arguable merit in fact or law, the court still does not find that he is entitled to counsel in this case, at this time. While the court recognizes that Coyle is untrained in the law, and is proceeding *in forma pauperis*, he has not sufficiently alleged that he lacks the ability to present his own case. In addition, the legal issues in this are not overly difficult because they relate to whether (1) Coyle sought medical attention from October 22, 2019, through November 1, 2019, but was ignored by John Doe Prison Guards 1–5 and John Doe PrimeCare Employees 1–5, and (2) John Doe Prison Guards 1–5 took away Coyle's wheelchair without justification even though Nurse Brown had ordered one for him. In terms of the necessary factual investigation, Coyle appears to have already obtained his medical records from MCCF and has attempted to retrieve

copies of any medical slips he submitted there (otherwise he would not be able to aver that the County did not maintain them). He will need to propound written discovery to obtain the names of the currently unknown defendants, and he might submit requests for admissions. As for credibility determinations, the court cannot discern at this time whether the case will turn on credibility determinations because the case has not proceeded to the point where the defendants have responded to Coyle's factual allegations. There does not appear to be a need for expert witnesses, and it does not appear that extensive discovery is needed in this case.

On balance, and after reviewing the above-referenced factors, the court will deny without prejudice Coyle's request for appointment of counsel.

### III.   CONCLUSION

For the reasons discussed above, the court will grant the PrimeCare Defendants' motion to dismiss and dismiss with prejudice Coyle's section 1983 claim for deliberate indifference to his serious medical needs against PrimeCare and his medical malpractice claims against PrimeCare; Dr. Wilbraham;[24] Nurses Brown, Brighter, Shaeffer, and Abdalghani; PA Culp; PA Napolitano; and John Doe PrimeCare Employees 1–5. The court will also grant the County's motion to dismiss and will dismiss with prejudice Coyle's section 1983 municipal liability claim against it. Moreover, after screening the new allegations in the amended complaint, the court will (1) dismiss Coyle's medical malpractice claim against the Hospital and Surgery Team, (2) dismiss any section 1983 claim (whether via the Eighth Amendment or Fourteenth Amendment) against Mr. White Shirt, and (3) dismiss with prejudice Coyle's section 1983 municipal liability claim against MCCF. The court will also schedule a conference with counsel for the PrimeCare Defendants, the County,

---

[24] If the court had not dismissed the medical malpractice claim against Dr. Wilbraham, the court would have notified Coyle of its intent to dismiss his claim against Dr. Wilbraham for the failure to timely serve under Rule 4(m) of the Federal Rules of Civil Procedure. More than 14 months have passed since the court deemed Coyle's original complaint filed, and Dr. Wilbraham has yet to be served.

and Coyle to discuss the other issues identified in this opinion and the schedule for moving forward

in this matter.

     The court will enter a separate order.


                        BY THE COURT:


                        */s/ Edward G. Smith*
                        EDWARD G. SMITH, J.